**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **OCWEN LOAN SERVICING, LLC,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO. 16-6586** |
| | : | |
| **RADIAN GUARANTY, INC.** | : | |


**MEMORANDUM**

**KEARNEY, J.**                                                                 **January 31, 2018**

The effect of the residential home mortgage crisis beginning over ten years ago now involves two companies never meeting the homeowners who lost their homes. We today review an insurer's obligations in insurance policies on 30 defaulted mortgages. The loan servicer for the defaulted mortgages is now suing the insurer for coverage and damages. The parties chose these 30 defaulted mortgages as examples to guide us in resolving the scope of insurance coverage for over 7,000 other loan defaults. After studying both the loan servicer's and insurer's variety of arguments seeking judgment as a matter of law based on statute of limitations and contract interpretation, we enter the accompanying Order granting the parties' cross-motions for summary judgment in part but denying their cross-motions in part on issues either not developed or ripe for summary resolution.

I.      **Introduction to the mortgage insurance market.**

While most of today's analysis arises in the microcosm of insurance policies of interest principally to trustees of mortgage investment vehicles and insurers, some brief context may be helpful to citizens. A home purchaser may borrow money from a bank to buy a home and

provide her bank with a mortgage to secure the borrowing.    The home purchaser provides information on, among other things, her finances, income, and type of residence.  The lender studies this offered information and decides how much to lend the home purchaser secured by a mortgage on the home.  If the homeowner defaults on her loan, the bank may foreclose on the home.

As occurred in the mid-2000s, the bank may sell the homeowner's mortgage into a pool of individual mortgages owned by an investment vehicle controlled by a trustee which, in turn, sells ownership interests in the pooled mortgages as securities. The trustee holding the thousands of pooled mortgages may also hire a mortgage loan "servicer" to collect the loan payments from the home purchaser and otherwise protect rights under the mortgage. The trustee may acquire insurance to cover losses for defaults in any of its pooled mortgages. The insurer describes its policy sold to the trustee as a "loan certificate" to cover an individual mortgage.  If the homeowner defaults on her mortgage then held by the investment vehicle, the trustee through its loan servicer may seek to recover losses from the insurer.

## II.    Disputed issues.

Ocwen Loan Servicing, LLC and Homeward Residential, Inc. ("Ocwen") are residential mortgage loan servicers. Radian Guaranty, Inc. sells residential mortgage insurance.[1]  Before the housing bubble burst beginning in 2007-2008, Ocwen serviced and Radian insured mortgages where the lenders used alternative underwriting guidelines to verify the incomes of borrowers and approve loan amounts secured by mortgages.  These mortgages are commonly called "stated income," "subprime", or "Alt-A" mortgages.[2]  Radian insured residential mortgages through three types of policies, "primary," "pool," and "modified pool" policies.[3]  Radian's primary

policy is coverage for a single mortgage while its pool and modified pool policies cover a group or a "pool" of mortgages insured together.[4]

This case involves 7,095 mortgages serviced by Ocwen and insured by Radian.[5]  At its most basic, Ocwen alleges Radian insured these mortgages under "relax[ed]" guidelines and then after the housing crisis and while facing increasing mortgage defaults and fearing its financial exposure, Radian began re-underwriting the mortgages after Ocwen submitted a claim resulting in Radian denying, curtailing, or rescinding coverage for these mortgages based on new requirements or interpretations of its earlier guidelines.[6]  Ocwen sued alleging Radian breached their contract and acted in bad faith in denying coverage and seeks declaratory judgment and equitable indemnification.  Radian responds Ocwen breached their contract by failing to cure defaults, modify mortgage terms, or mitigate losses when servicing the mortgages.[7]  Radian also alleges Ocwen committed insurance fraud under Pennsylvania law by knowingly submitting "meritless" policy claims and alleged it unjustly enriched Ocwen when it accepted payments for claims on the mortgage certificates it now includes in this case.[8]

While there are arguably 7,095 different claims for coverage, many of the issues focus on our contract interpretation of common policy language in thousands of loan certificates. The parties agree many claims could be dismissed through dispositive motions.   Consistent with our obligation under Federal Rule of Civil Procedure 1, we ordered discovery to proceed in two phases. In the first phase, we ordered each party to select 20 loans (40 loans total) "intended to present a good faith representative sampling bellwether of most, if not all, legal issues to be resolved."[9]

During discovery, both parties agreed to cross-move for judgment on what they perceived to be common legal issues in 40 selected bellwether loans.[10]  Ocwen then withdrew its claims on

10 of the bellwether loans.[11]  We will first address the cross-motions for summary judgment on Ocwen's breach of contract, bad faith, and equitable indemnification claims and then we will address Ocwen's motions for summary on Radian's counterclaims for statutory insurance fraud, breach of contract, and unjust enrichment.   We address arguments on the remaining 30 bellwether loan certificates.[12]

**III.     Summary judgment on Ocwen's breach of contract and bad faith claims.**

Radian seeks judgment dismissing Ocwen's breach of contract, bad faith, and equitable indemnification claims.  Ocwen moves for judgment on its breach of contract claims.  Neither party moves on Ocwen's declaratory judgment claim.

**A.     Ocwen's breach of contract claim.**

Ocwen alleges Radian breached the terms of the loan certificate for 30 bellwether loan certificates.   Radian raises a variety of arguments seeking judgment: on 3 loan certificates, Radian already paid the Aggregate Risk Amount[13];  on 9 loan certificates, Ocwen's breach of contract claim is barred by the suit limitations period defined in the loan certificate;  on 14 loan certificates, the claims are barred by mutual rescission; on 6 loan certificates, the claims are barred by accord and satisfaction; and, on 3 loan certificates, Ocwen failed to timely submit the initial coverage claim to Radian.

Ocwen moves for summary judgment on its breach of contract claim on 4 of the loan certificates arguing Radian breached as a matter of law.

**1.     Radian fails to adduce undisputed evidence Ocwen's breach of contract for 3 loan certificates is barred because Radian satisfied the Aggregate Risk Amount.**

Radian moves for summary judgment on 3 loan certificates (53106980, 53108723, 53107616) arguing it paid the Aggregate Risk Amount under Pool Policy 06-103210 which

covers all 3 loan certificates. Radian also moves for summary judgment on the other non-bellwether loan certificates covered under Pool Policy 06-103210 because it paid the Aggregate Risk Amount.

### a. Relevant disputed facts.

Pool Policy 06-103210 covers 3 loan certificates. It has an Aggregate Risk Amount of $28,645,690.[14] The policy also has an aggregate loss limit term so when Radian pays aggregate losses equaling the Aggregate Loss Limit of the policy, "the liability of [Radian] to pay any additional claims for loss ceases until the aggregate losses are reduced to an amount below the Aggregate Loss Limit."[15]

Radian's executive vice president for Mortgage Insurance and Services Operations declares Radian paid $28,650,559.89 in aggregate losses on Pool Policy 06-103210 which is $4,869.89 over the Aggregate Loss Limit.[16] Radian argues because its payments on the policy exceed the Aggregate Risk Amount, it has no liability to pay more on these 3 loan certificates. In response, Ocwen's executive vice president and chief executive officer declares Radian paid $28,554,227.28 on Pool Policy 06-103210 which is $91,462.80 less than the Aggregate Risk Amount.[17]

We deny summary judgment for Radian on loan certificates 53106980, 53108723, and 53107616 because there is a genuine dispute of material fact whether Radian's payments under Pool Policy 06-103210 equaled the Aggregate Loss Amount.

### 2. Ocwen's breach of contract claims barred by the suit limitation.

Radian moves for summary judgment on 9 loan certificates arguing Ocwen's breach of contract claim is barred by the suit limitation provision under the specific policy for each certificate. The parties dispute which event triggers the contractual period of limitations. Radian

argues the triggering event is the home foreclosure or other approved sale of the property but "solely for the purposes of this motion" argues the triggering event is the "insured's acquisition of the borrower's title to the property."[18]   Ocwen argues the triggering event is the date Radian denies, curtails, or rescinds its claim under the insurance policy.   The parties also dispute whether the conformity clause if the policies requires us to conform the suit limitation provision to Florida's five-year statute of limitations on Florida homes.

a.      Relevant undisputed facts.

Radian's master policy generally governs its relationship with the "Insured" when Radian issues primary coverage for flow or bulk mortgage transactions.[19]   Because Radian issues an additional policy when issuing coverage for the pool of mortgages (either flow or bulk), the pools (and individual mortgages) are often governed by both the master policy and the specific documents.[20]

| Loan Certificate | Policy type | Suit limitation | Located in Florida | Radian decision/last action date |
|---|---|---|---|---|
| 53001043 | Master | 2 | | 5/19/2014 |
| 64040480 | Master | 2 | x | 5/2/2013 |
| 65575723 | Master | 2 | | 1/7/2015 |
| 65584131 | Master | 3 | | 12/11/2013 |
| 65817890 | Pool | 2 | x | 2/3/2012 |
| 82618193 | Master | 2 | | 11/11/2013 |
| 95652591 | Master | 2 | | 8/13/2014 |
| 96405536 | Master | 2 | | 7/7/2014 |
| 96729457 | Master | 2 | | 7/25/2015 |

### *Master Policy Loans*

Eight of the bellwether loans are governed by Radian's master policy.[21]   The master policy describes the procedure for the Insured to submit a claim under the policy.[22]   Radian requires the insured bank to submit "a Perfected Claim within one year after the acquisition of Borrower's Title to the Property" or Radian is relieved of its duties under the policy.[23]   Radian does not allow the insured bank to submit a claim until bank acquires the borrower's title unless certain exceptions are met.[24]

The master policy states "[n]o suit or action arising from any right of the Insured under this this Policy shall be commenced in any court of law or equity … unless commenced within two (2) years after such right shall first arise."[25]   The master policy also states "[a]ny provision of this Policy, which is in clear conflict with the laws of the jurisdiction in which the Property is located is hereby amended to conform to the minimum requirements of that law, it being the intention of the Insured and the Company that the specific provisions of this Policy shall be controlling whenever possible."[26]

### *Pool Policy Loan*

One of the bellwether loans is governed by Radian's Pool Policy 05-048033.[27]   Under the Pool Policy, claims with a primary policy "may be filed with [Radian] … within sixty (60) days after any and all claim(s) for loss have been settled and paid under the Primary Policy or within sixty (60) days after the Insured has conveyed title to the property pursuant to an Approved Sale…" and claims for loss without a primary policy "may be filed with [Radian] … within sixty (60) days the Insured has conveyed title to the property pursuant to the Approved Sale…"[28]   For claims either with or without a primary policy, "[f]ailure to file a claim for loss within one

hundred eighty (180) days after the claim could first be filed …. shall be deemed an election by the Insured to waive any rights to claim payment under the terms of this Policy."[29]

The Pool Policy requires "[a] Suit against [Radian] must be commenced within three (3) years after the loss can be determined."[30]  The policy also includes a "conformity" clause providing "[a]ny provision of the Policy which is in conflict with the laws of the jurisdiction in which it is effective is hereby amended to conform with the minimum requirements of such laws."[31]

### b.     Analysis

#### i.     The contractual limitations period begins with Radian's alleged breach of the policy.

The triggering event for the contractual period of limitations is Radian's alleged breach of the mortgage insurance policy, not the date of "insured's acquisition of the borrower's title to the property."[32]  In construing the contracts, we must give effect to all of the provisions and provisions and those which "seem in conflict must be construed, where possible, as consistent with one another."[33]  We read the provisions as a whole, and not independently of each other and "[o]ne part of a contract should not be read to nullify another."[34]

For the master policy, Radian requires a claim under the policy to be submitted within one year after the bank acquires borrower's title to the property and barring exception, prohibits the submission of a claim until the bank acquires the borrower's title.[35]  Then in a separate provision, Radian requires the insured bank to bring suit for "any right" under the policy within two years "after such right shall first arise."[36]

We do not agree with Radian's proposed interpretations.  First, Radian's argument this limitations period begins "no later than the date of foreclosure or other approved sale" does not make sense when it requires the insured acquire title to the property to submit a claim under the

policy. Under this argument, the clock would start running for the insured to bring its breach of contract claim against Radian before it could submit a claim to Radian under its own policy. We cannot read the master policy to have this inconsistent condition for the insured to assert its rights.

Radian's second proposed interpretation of "such right shall first arise" means the date the insured acquires the borrower's title to the property also produces inconsistent results when the master policy is read as a whole. We cannot construe the submission of claims provision and the suit limitation provision to begin with the same triggering event where Radian chose different language in each provision. In contract interpretation, we presume if Radian wanted these two provisions "to have the same meaning, [it] would have used the same language."[37] If Radian wanted the suit limitation provision to begin the day the insured acquired the borrower's title through foreclosure or other approved sale, it would have phrased the language just like it the claims submission provision. But Radian did not. It chose different language, when "such right shall first arise." Construing the contract as a whole, the right arises on the date the insured believes Radian breached a duty under the contract; in this case the date Radian rescinded, curtailed, or denied coverage on a claim submitted by Ocwen.

Construing the right arising on the date of Radian's alleged breach also makes sense logically. Following Radian's interpretation of "the right" being acquiring title to the borrower's property would produce the bizarre result of the insured alleging Radian breached the contract before the insured submitted the claim for coverage under the policy. It also could lead to the insured being denied the right to sue for breach of contract if Radian did not adversely act on the claim within two years of acquiring title and leave the insured without agreed upon recourse in

court because the insured cannot maintain an action for breach of contract against Radian until it, in fact, breaches somehow.

We apply the same principles to the pool policy where Radian starts the claim submission deadline the day "the Insured has conveyed title to the property pursuant to an Approved Sale"[38] The pool policy's suit limitation provision defined the start date as the date the insured's "loss can be determined."[39] Once again, Radian argues we should interpret the two differently worded phrases to mean the same thing. We decline to do so. For the reasons described above, we construe these provisions to refer to different triggering events because the parties used different words. Under the suit limitation provision, the date the insured's "loss can be determined" is the date the insured can calculate its loss from Radian's alleged breach of the policy.

In support of its argument the triggering event is the foreclosure or sale of the property, Radian relies on our court of appeals' decision in *U.S. Bank Nat. Ass'n v. First American Title Ins. Corp.*[40] In *U.S. Bank*, however, our court of appeals determined the triggering event for breach of contract claim on a title insurance policy for Pennsylvania's statute of limitations.[41] This holding has little persuasive value because Radian included its own contractual suit limitations provision and we only need to interpret the parties' contract to determine the triggering event.

ii.     **The conformity clause requires we honor Florida's five-year statute of limitations.**

Two of loan certificates are for Florida properties.[42] Florida law voids "[a]ny provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provide by the applicable statute of limitations."[43] Florida has a five year statute of limitations for a breach of contract claim.[44]

The pool policy's conformity clause states if its provisions are "in conflict with the laws of the jurisdiction in which it is effective is hereby amended to conform with the minimum requirements of such laws."[45]  The master policy's conformity clause states "[a]ny provision of this Policy, which is in clear conflict with the laws of the jurisdiction in which the Property is located is hereby amended to conform to the minimum requirements of that law, it being the intention of the Insured and the Company that the specific provisions of this Policy shall be controlling whenever possible."[46]

Under the conformity clause's plain language, the relevant policies are amended to meet the minimum required by the state of Florida where there is a "clear conflict" between the policy and Florida's minimum requirements for Florida properties.  There is a clear conflict between the suit limitations provisions for two or three years in the policy and Florida law because Florida law expressly prohibits and voids agreements where the parties attempt to shorten the statute of limitations from five years.   The parties do not cite and we cannot locate a Pennsylvania case discussing the interplay between conformity clauses and other state's statute of limitations.

Courts around the country, however, consistently find an insurance contract's conformity clause does not require a suit limitation period conform to the state's statute of limitations unless state law forbids the parties from shortening the statute of limitations.[47]  Florida law prohibits parties from shortening the statute of limitations from five years unlike the other cases where the states proscribed a statute of limitations but permitted parties to agree to shorter time periods than the statutory limit.  There is a "clear conflict" between the policies and Florida law which is the "law of the jurisdiction in which the property is located"/ "laws of the jurisdiction in which it is effective".  The relevant policies must conform to Florida's five year statute of limitations for loan certificates 65817890 and 64040480.

Ocwen's breach of contract claims for loan certificates 53001043, 64040480, 65575723, 65584131, 65817890, 82618193, 95652591, 96405536, and 96729457 are not barred by the suit limitation provision. We deny Radian's motion for summary judgment on this basis.

> **3.** **Ocwen adduced a genuine dispute of material fact whether acceptance of the refunded premium payments on loan certificates rescinded by Radian constitute mutual rescission.**

Radian moves for summary judgment on 14 loan certificates[48] arguing Ocwen's claims are barred because Radian rescinded coverage and returned the premium payments and Ocwen accepted the returned premiums. Radian alleges Ocwen's acceptance of the premium payments constitutes mutual rescission.

> **a.** **Relevant undisputed facts.**

The parties do not dispute Radian informed Ocwen by letter of its intent to rescind coverage for 13 of the bellwether loans. In each letter, Radian alleges it is rescinding coverage based on material misrepresentations or underwriting violations and gives Ocwen between 30 and 60 days to dispute or clarify the misrepresentations or Radian will formally rescind coverage.[49] The parties also do not dispute Radian then rescinded coverage by letter and included a check refunding the premiums which Ocwen deposited.[50]

One of the loan certificates, 69954693, Radian notified Ocwen of its intent to rescind coverage and Ocwen appealed Radian's decision.[51] Radian reversed its decision to rescind as "a business accommodation" and requested Ocwen return the refunded premium to reinstate coverage.[52] Ocwen never returned the refunded premiums to reinstate coverage.[53]

While Ocwen does not dispute these facts, it adduces evidence through John V. Britti, Executive Vice President and Chief Executive Officer, to dispute the inference of mutual rescission. Mr. Britti swears Radian's policies do not state by depositing the refunded

check Ocwen waives the insured's right to challenge the rescission.[54]  Mr. Britti declares Ocwen "regularly" appeals Radian's rescission after Ocwen deposited the refunded premium check and Radian has never before taken the position Ocwen cannot appeal the rescission because it deposited the premium refund check.[55]  Mr. Britti declares when Radian decided to reinstate coverage after rescinding it, it requests Ocwen return the refunded premium check.[56]

Mr. Britti declares he is "aware of instances where (1) Ocwen cashed the premium refund check, (2) Ocwen appealed Radian's decision to rescind and (3) Radian responded to Ocwen's appeal but did not take the position that coverage has been rescinded by virtue of Ocwen having cashed the refund check."[57]  Mr. Britti is also aware of Radian overturning the rescission and reinstating coverage for a policy where Ocwen deposited the refunded premium check and Radian never requested Ocwen return the refunded premiums.[58]

### b.    Analysis

While Pennsylvania law allows an insurer to unilaterally rescind an insurance policy by returning the premium where the insured knowingly or in bad faith made a false representation or clear and convincing evidence shows the insured knowingly failed to disclose and the information "was material to the risk to be insured," no court in Pennsylvania has discussed or allowed a defense of mutual rescission based on the insurance company rescinding and the insured depositing the returned premium checks.[59]

Courts in other states addressing mutual rescission of an insurance contract agree "mutual rescission depends on the intent of the parties as evidenced by their acts and the attending circumstances, and that the act of [indorsing and depositing] a refund check after notice of cancellation as least raises an inference of mutual rescission."[60]

The Colorado Supreme Court addressed mutual rescission of an insurance policy in a persuasive ruling in *Avemco*.[61]  Avemco, a commercial airline insurer, issued a policy to Northern Colorado Air Charter.[62]  After lightning struck its aircraft, Northern Colorado filed a coverage claim with Avemco.[63]  Avemco discovered Northern Colorado made material misrepresentations on its insurance application.[64]  Avemco told Northern Colorado because of the alleged material misrepresentations in the application, Avemco would rescind the insurance policy and then, a month later, returned the premiums paid by Northern Colorado.[65]  Avemco sought a declaratory judgment it did not have provide coverage under the policy because of the material misrepresentations.[66]  Northern Colorado answered Avemco's declaratory judgment action and counterclaimed for breach of contract.[67]  About a month after it counterclaimed, Northern Colorado endorsed and deposited the refunded premium check from Avemco.[68]

Avemco argued Northern Colorado's depositing the refunded premium check constituted mutual rescission and the insurance contract is void *ab initio*.[69]  The Colorado Supreme Court agreed with Avemco finding Northern Colorado's endorsing and depositing the refunded premiums after Avemco rescinded the insurance contract constitute mutual rescission and voided the contract.  The court explained, "[w]hen an insurer mails a letter to an insured stating its intent to rescind and tenders a check to the insured representing a refund of the premiums, and the insured understands the intent to rescind when cashing the check, a meeting of the minds is deemed to have occurred."[70]  The court held this inquiry is not based on the subjective intent of the parties but based on the parties' words and conduct as "objective manifestations of assent."[71]

The Colorado Supreme Court noted mutual rescission is usually a question of fact but where there is no genuine dispute of material fact the insurer expressed its intent to rescind and refunded premiums and the insured endorsed and deposited the check "whether rescission has

occurred may become a question of law for the court."[72]  While Northern Colorado did not dispute these facts, it argued there is a genuine dispute of material fact whether it manifested assent to mutual rescission.  Northern Colorado argued it did not consent based on declarations from employees stating they did not intend to consent to mutual rescission when depositing the check and the counterclaims it filed in the parties' litigation before depositing the check evidencing it did not agree to mutually rescind the policy.[73]  The Colorado Supreme Court held while the insured could adduce evidence to rebut the inference of mutual rescission, the evidence had to be "more than an assertion of a subjective intent not to rescind" and found Northern Colorado's evidence did not create a genuine dispute of material fact.[74]  The court first held the employees' declarations did not create a fact dispute because they merely discussed subjective intent which does not matter in mutual rescission.[75]  The court also rejected Northern Colorado's litigation against Avemco rebutted the inference of mutual rescission because there is no dispute Northern Colorado "knew and understood Avemco's intent in tendering the premium refund check.  Any action taken beyond the mailing of the letter and the check by Avemco and the cashing of that check by [Northern Colorado] does not go to the inference of rescission that arose when [Northern Colorado] cashed the check because such actions do not go to the central issue of a meeting of the minds through objective manifestations of mutual assent to rescind."[76]

Ocwen and Radian do not dispute Radian informed Ocwen of its intent to rescind coverage with the refunded premium check and Ocwen deposited the refunded premium check for each loan certificate.  Ocwen's accepting and depositing the refunded premium check raises the inference of mutual rescission as in *Avemco* where Northern Colorado's depositing Avemco's check after Avemco notified it of its intent to rescind coverage created the inference.[77]

Ocwen adduced a genuine dispute of material fact to rebut the inference depositing the check signified mutual rescission through evidence of the parties' previous course of conduct when Radian rescinds coverage. Mr. Britti, unlike the employee declarations in *Avemco*, adduces evidence to rebut rescission beyond the simple subjective intent not to rescind. Here, Mr. Britti swears during in their interactions, Radian has never treated Ocwen's depositing of refunded premium check as mutual rescission because Radian allows Ocwen to appeal a rescission even after Ocwen deposited the refunded premium check, and if Radian decides to reinstate coverage after rescission, it requests Ocwen return the refunded premium check.[78] The evidence is persuasive because it is based on the parties' conduct during previous identical interactions, unlike in *Avemco*, where there was a single interaction between the two parties.

We deny Radian's motion for summary judgment because it does not establish its affirmative defense of mutual rescission as a matter of law on Ocwen's breach of contract claim on loan certificates 5300143, 5301065, 53108723, 53194326, 53225724, 65791708, 65818414, 65826484, 65860272, 65954693, 82618193, 96405536, 96413862, and 99573712. There are genuine disputes of material fact as to whether Ocwen assented to rescission when it deposited the refunded premium check.

**4.** **We grant Ocwen summary judgment for one loan certificate for its breach of contract claim and deny on two loan certificates because it fails to establish Radian's rescission of coverage is a breach of contract claim as a matter of law.**

Ocwen moves for summary judgment on its own breach of contract claim on loan certificates 99573712 and 65791708 arguing it adduced Radian improperly rescinded coverage based on borrower's misrepresentations because Radian did not adduce evidence the insured knew about the misrepresentations. Ocwen moves for summary judgment on its own breach of

contract claim on loan certificate 96405536 because Radian improperly rescinded coverage based on underwriting guideline violations.

<strong>a.      Relevant undisputed facts.</strong>

<em>Loan certificate 99573712 and 96405536</em>

Loan certificate 99573712 is governed by the master policy under a delegated underwriting program. Ocwen submitted a claim for loan certificate 99573712. Radian rescinded coverage based on alleged misrepresentations because the loan application stated the borrower received $2,031.00 of Social Security income and $6,250.00 from a pension and after the claim, Radian interviewed the borrower who stated she never made those representations to the lender at origination.[79]

Radian issued loan certificate 96405536 through a delegated underwriting program and the loan is governed by the master policy and the Delegated Underwriting Endorsement.[80] Ocwen submitted a claim for this loan certificate and Radian rescinded coverage because the "underwriter used income from a W2 form, but did not reduce the income from by a loss reported on [the borrower's] Schedule K-1."[81]

A copy of the Delegated Underwriting Endorsement is in the Appendix but Ocwen disputes this document governs either loan certificate at issue.[82] Under the delegated underwriting program, Radian and the Insured agreed the Insured would "perform certain mortgage insurance underwriting and processing functions."[83] Homeward Residential is the delegated underwriter for loan certificate 99573712. Indy Mac is the delegated underwriter for loan certificate 96405536.

Under the endorsement, the Insured represents "all statements in any Application for Insurance … are true and correct in all material respects and supported by verified information in

the Insured's origination file…"[84]  Radian has the right to audit or investigation "and the Insured understands that the findings may result in a rescission of the Insured's Commitment and/or Certificate of Insurance."[85]  Radian agreed to insure the loans under the master policy "based upon the Insured's representations as set forth in this endorsement."[86]

The endorsement also states "in the event that a Program Loan deviates from [Radian's] Underwriting Guidelines … [Radian] shall have the right to immediately terminate the Insured's participation in the Program.  Any such termination shall not have any impact on Certificates of Insurance issued to the Insured prior to the date of such termination."[87]

Radian, under the master policy, does not cover losses on a loan certificate where Radian issued the policy in reliance on an "Application for Insurance containing any material misstatements, misrepresentation or omission, whether intentional or otherwise or as a result of any act of fraud; provided, however, that unless the Insured had knowledge of or participated in a Third-Party Misrepresentation or Fraud at the time it was made, [Radian] shall not rescind or deny coverage, or adjust any Claim based on such Third-Party Misrepresentation or Fraud"[88]

The master policy defines Application for Insurance as "all documents, materials, statements and exhibits, whether or not prepared by the Insured" submitted to Radian.[89]  The policy also defined "Third-Party Misrepresentation or Fraud" as "a misrepresentation or fraud by anyone other than the Insured, its employees or agents.  For purposes of this definition, the Insured's agents shall include any mortgage and/or intermediary originating the Loan, or anyone under contract with such persons in connection with the origination of the Loan, such as an appraiser or escrow agent."[90]

*Loan certificate 65791708*

Loan certificate 65791708 is governed by Pool Policy 05-078029.[91]  Ocwen submitted a coverage claim for loan certificate 65791708.  Radian decided to rescind because "borrower's purported employment/income cannot be independently verified as being accurate."[92]  Radian further rescinded coverage because borrower filed for bankruptcy shortly after the lender approved the mortgage and in the bankruptcy proceedings, the borrower filed a reaffirmation agreement confirming he falsified his mortgage application.[93]  Radian also rescinded after learning, before the lender approved the mortgage, the borrower submitted a handwritten letter claiming a higher income than later appeared on the application and the loan originator should have known there was a discrepancy.[94]

Pool Policy 05-078029 provides Radian "shall not be liable for and the Policy shall not apply to, extend to or cover any loss for which a claim is made in connection with a Mortgage Agreement as to which there has been an intentional and material misstatement, misrepresentation or omission as a result of any other act of fraud."[95]

### b.    Analysis

Ocwen argues the master policy, the delegated underwriting endorsement, and Pool Policy 05-078029 do not permit Radian to rescind coverage based on solely on a borrower's misrepresentations or underwriting guideline violations in the loan application.[96]

*Loan certificate 65791708*

For loan certificate 65791708, Radian adduced facts showing the "borrower's purported employment/income cannot be independently verified as being accurate" and loan originator may have been aware based the borrower's handwritten letter claiming a higher income than later appeared on the application.[97]  The policy does not cover claims where there is "intentional

and material misstatement, misrepresentation or omission as a result of any other act of fraud" and Radian adduced evidence for a jury to find the borrower mispresented his or her income and the loan originator knew of the misrepresentation.[98] We deny summary judgment to Ocwen on its breach of contract claim for this loan certificate because there is a genuine dispute of material fact whether the Insured or its agent knew of the borrower's misrepresentation.

### *Loan certificate 99573712*

Whether Radian can rescind coverage for loan certificate 99573712 based on borrower's misrepresentations is more complicated because it is governed by both the delegated underwriting endorsement and the master policy and both policies address the effects of borrower's misrepresentation. We must interpret two documents forming an agreement and two different provisions on the same topic.

Under Pennsylvania law, the more specific provisions of a contract "should trump general provisions."[99] The delegated underwriting endorsement which generally allows Radian to rescind after an investigation is trumped by the master policy's more specific provision defining when Radian may rescind coverage based on fraud and misrepresentation. The master policy requires evidence the Insured knew of a borrower's misrepresentation before rescinding coverage. Radian adduced evidence it rescinded coverage because the loan application stated the borrower received $2,031.00 of Social Security income and $6,250.00 from a pension and after the claim, Radian interviewed the borrower who stated she never made those representations to the lender at origination.[100] We deny Ocwen's motion for summary judgment because there is a genuine dispute of material fact whether the loan originator knew of or participated in the misrepresentation of the borrower's income for the jury to resolve.

*Loan certificate 96405536*

Ocwen argues under the delegated underwriting endorsement Radian may not rescind coverage for loan certificate 96405536 based only a lender's alleged guideline violation in miscalculating the borrower's debt to income ratio for the loan application. The endorsement states if the Insured underwrites a loan which does not meet guidelines, Radian can terminate the Insured's rights under the endorsement. But Radian's termination of the Insured's right to underwrite "shall not have any impact on Certificates of Insurance issued to the Insured prior to the date of such termination."[101]

Where the Insured violates an underwriting guideline, the plain language of the endorsement defines Radian's recourse is to terminate the Insured's participation in the program but has no effect on the loan certificates already issued. Radian argues it may also rescind certificates quoting the provision allowing Radian to investigate and it "may result in a rescission of the Insured's Commitment and/or Certificate of Insurance."[102] Radian's argument it can rescind is not persuasive because the endorsement specifically details Radian's rights and limitations where an insured commits an underwriting guideline violation. We decline to expand Radian's recourse to include other parts of the endorsement when Radian created this endorsement and program and chose to include the specific remedies for Insured's guidelines violations. We grant Ocwen summary judgment on its breach of contract claim for loan certificate 96405536 because Radian may not rescind coverage based solely on a guideline violation for loans insured through its delegated underwriting program.

5. **Radian failed to establish Ocwen's breach of contract claims on 6 loan certificates is barred as a matter of law based on Radian's affirmative defense of accord and satisfaction.**

Radian moves for summary judgment on 6 loan certificates arguing Ocwen's claims are barred by accord and satisfaction because Radian curtailed coverage and Ocwen accepted the curtailed payments.

a. **Relevant undisputed facts.**

| Loan Certificate | Radian's first curtailed wire payment | Radian's second curtailed wire payment | Statement of Undisputed Facts |
|---|---|---|---|
| 53011114 | 6/3/2016 | 8/10/2016 | ECF Doc. No. 85-2, ¶ 56 |
| 65858954 | n/a | n/a | |
| 99308281 | 3/7/2014 | 6/5/2014 | ECF Doc. No. 85-3, ¶ 109 |
| 53107616 | 4/30/2014 | | ECF Doc. No. 85-2, ¶ 62 |
| 95652591 | 11/8/2013[103] | 8/13/2014 | ECF Doc. No. 85-3, ¶ 94 |
| 95910060 | 7/14/2014 | | ECF Doc. No. 85-3, ¶ 99 |

For each curtailed loan, Radian responded to Ocwen's claim under the policy with an explanation of benefits summarizing the claim and, in the "Servicing Review Curtailment", detailed the reasons for reducing the claim amount. For example, in loan certificate 5301114, Radian issued an Explanation of Benefits on May 25, 2016.[104] In the Explanation of Benefits, Radian states how much it curtailed the claim and the reason for curtailment.[105] In the Authorized column, Radian reports the authorized claim for $39,212.64. Nowhere does Radian state it is offering the curtailed payment as full satisfaction of Ocwen's claim or its duty under the policy is extinguished when Ocwen accepts the payments. Nine days after it issued the Explanation of Benefits, Radian wired a payment to Ocwen for $39,212.64.[106] Just over two

months later, Radian wired a second payment to Ocwen for $465.26 on the same curtailed claim.[107]  This amount does not match an amount of the explanation of benefits and Radian does not explain the second payment.

Ocwen adduced evidence after Radian curtailed coverage and wired the payment to Ocwen, it still accepted Ocwen's appeal for the curtailment, revised its explanation of benefits, and issued an additional payment to Ocwen.[108]  Mr. Britti declared Ocwen often has no notice Radian has curtailed the claim before the wire payment appears in its account.[109]

### b.    Analysis

We first deny summary judgment on loan certificate 65858954 because Radian does not cite payment based on the curtailed claim in its statement of undisputed facts meaning there is no evidence of a payment for its accord and satisfaction affirmative defense.  As to the other 6 loan certificates, we find genuine disputes of material fact whether Radian's explanation of benefits and its separate (and sometimes more than one) wire payments constitute an offer of payment to fully satisfy Ocwen's claim under the policy.

Where a debtor and creditor dispute the debt owed to the creditor, they may create a "substitute contract," called accord and satisfaction, where they agree to settlement their disputed debt by "some alternative performance other than full payment of the debt."[110]  Accord and satisfaction, as a contract, needs an offer, acceptance, and consideration and these are proved through "(1) a disputed debt; (2) a clear and unequivocal offer of payment in full satisfaction, and; (3) acceptance and retention of payment by the offeree."[111]

There are genuine disputes of material fact whether Radian even makes "a clear and unequivocal offer of payment in full satisfaction."  The document Radian points to as the "clear and unequivocal" offer is the explanation of benefit which at best lists an authorized final claim

amount and informs Ocwen why it curtailed payment. The explanation of benefits does not tie the authorized final claim to a "clear and unequivocal" statement the authorized final amount is offered to fully satisfy the disputed debt (Ocwen's claim under the policy). Further undercutting the explanation of benefits document as a clear offer of payment is the fact Radian paid Ocwen twice, first for authorized final amount listed and then for a second unexplained amount of money not tethered to the offering document. Ocwen also adduces evidence Radian accepted its appeals and issued further payments on loan certificates where Radian sent an explanation of benefits and wired the curtailed payment suggesting the explanation of benefits did not function as a final offer to settlement their disputed debt. These fact issues preclude us from finding as a matter of law Radian made a "clear and unequivocal offer of payment in full satisfaction" of Ocwen's claim under the policy.[112] Even if Radian made an offer, Ocwen also adduces genuine disputes of material fact whether it accepted the payment as satisfaction of the disputed debt because Radian could wire the curtailed payments before Ocwen had notice of the curtailments.

We deny Radian summary judgment on its affirmative defense Ocwen's breach of contract claim on curtailed loans are barred by accord and satisfaction because there are genuine disputes of material fact.

### 6. Genuine disputes of material fact preclude summary judgment on whether Radian is prohibited from curtailing loans based on Ocwen's delay in acquiring foreclosure within a certain timeframe.

Ocwen moves for summary judgment on loan certificate 53107616 because Radian curtailed payments under the policy using foreclosure timelines from servicing guidelines which were not part of the policy and without establishing Ocwen acted in a negligent manner, caused any loss, or the curtailed amount is related an actual loss suffered by Radian. Radian argues it

relies on servicing guidelines and other factors to determine if Ocwen did not service the loan to the policy's standards and by what percentage to curtail coverage.

### a.    Relevant Facts

Radian issued coverage for loan certificate 53107616 under Pool Policy 06-103210.[113] The policy does not have any terms related to the appropriate timeline for foreclosure or have any provisions about curtailment.[114] The policy confirms the loan certificates "will be serviced in a manner materially consistent with Option One's (the Insured) customary procedures and guidelines and in accordance with the provisions of the Pooling and Servicing Agreement…"[115]

Ocwen submitted a claim to Radian for Loan certificate 53107616. Radian curtailed coverage by 20% because the foreclosure happened after 115 days after the required date, Ocwen failed to make efforts to timely or adequately cure default, did not successfully make Quality Right Party Contact," did not timely pursue alternatives to foreclosure, and did not timely send a breach letter.[116]

### b.    Analysis

Radian argues Ocwen "explicitly undertook" to adhere to these servicing timelines in the pool policy by agreeing meet Option One's guidelines. We cannot rule as a matter of law whether Radian curtailed coverage loan certificate 53107616 based on Option One's guidelines because neither party attached Option One's procedures for our review.

Ocwen argues Radian impermissibly curtailed coverage for loan certificate 53107616 based on the Government-Sponsored Enterprises' servicing guidelines (for Fannie Mae and Freddie Mac). Radian admits its policies do not reference the Government-Sponsored Enterprises' servicing guidelines but argues because those servicing guidelines represent the

industry standard and under the master policy, Ocwen agreed to service loans with the highest industry standards.

We deny Ocwen summary judgment because there are genuine disputes of material fact as to the servicing standard under Pool Policy 06-103210 for loan certificate 53107616 and whether Radian properly curtailed coverage based Ocwen's allegedly negligent conduct. These are fact questions for the fact-finder.

### 7. Radian fails to adduce evidence Ocwen's breach of contract claim on 3 loan certificates is barred by Ocwen's untimely claims.

Radian moves for summary judgment on 3 loan certificates arguing it properly denied Ocwen's claims because Ocwen failed to timely submit the claims under the insurance policies. Ocwen argues Radian may not reject an otherwise valid insurance claim for being untimely unless Radian establishes actual prejudice from the late notice.

### a. Relevant disputed facts

| Loan Certificate | Deadline for claim submission under the policy.[117] | Date of foreclosure/sale | Date of claim submission | How late? |
|---|---|---|---|---|
| 53106980 | 180 days[118] | 8/28/2013 | 12/26/2014 | 485 days |
| 65575723 | 1 year | 7/22/2009 | 11/3/2014 | 5 years |
| 65957170 | 60 days | 2/18/2014 | 3/4/2014[119] | 15 days |

Loan certificate 53106980 is governed by Pool Policy 06-103210. This Policy is effective June 1, 2006 and "shall continue in force (1) as to each Residential Mortgage

Agreement … until it has been paid in full, is no longer represented by the Security or is otherwise liquidated or (2) until the Security is redeemed or otherwise paid in full."[120]

Loan certificate 65575723 is governed by the master policy. The master policy provides Radian will "provide coverage for the period of time shown on the face thereof" and allows for renewal for a new applicable time period.[121] The master policy also excludes coverage for "[a]ny Loss arising from the a Default if, as of the Effective Date of the Certificate of Insurance, a delinquency exists with respect to any payment under the Loan."[122] Loan certificate 65575723 identifies an effective date of December 30, 2002 and a renewal premium is posted on June 30, 2014.[123]

### b.  Analysis

We deny both parties summary judgment on loan certificate 65957170 because there is a genuine dispute of material fact whether Ocwen submitted a timely claim under the policies. For loan certificates 53106980 and 65575723, there is no dispute Ocwen submitted untimely claims under the relevant policy. The question is whether under Pennsylvania law, Radian can deny the claims solely because they are untimely or Radian must show actual prejudice from the untimely submission before denying.

In *Brakeman v. Potomac Ins. Co.*, the Pennsylvania Supreme Court held an insurance company is not relieved of its duty under an insurance policy where the "insurance company's interests have not been harmed by a late notice."[124] The court explained "[t]he purpose of a policy provision requiring notice of an accident or loss to be given within a certain time is to give the insurer an opportunity to acquire, through an adequate investigation, full information about the circumstances of the case, on the basis on which, it can proceed to disposition, either through settlement or defense of the claim."[125]

The Pennsylvania Supreme Court held a showing of actual prejudice from late notice and not simply late notice is required based on two reasons. The court first held a "strict contractual approach" to insurance policies is "inappropriate" because the policy terms, including notice provisions, are dictated by the insurance company and not terms negotiated by the party.[126] The court also held requiring a showing of prejudice prevents the "unduly severe and inequitable" outcome of the insurance company keeping the insured's premium payments but denying a claim on a "technical escape-hatch" instead of valid, good faith reasons.[127] Applying these principles, the supreme court held an insurance company must show prejudice from late notice of the insured's motor cycle accident before denying a claim for lateness and remanded to allow the insurance company an opportunity to show prejudice.[128]

Our court of appeals recognized with primary insurance policies "the *Brakeman* rule applies even to policies between sophisticated parties."[129] This is because "*Brakeman* rested above all on the court's unwillingness to permit forfeiture of insurance protection 'unless a sound reason exists for doing.'"[130]

### i. The policies are occurrence policies.

The parties dispute whether *Brakeman* applies to Ocwen, as servicer acting on behalf of the insured, submitting a claim for mortgage insurance after title is transferred through foreclosure or other approved sale. Radian argues the policies for the loan certificates at issue are claims-made policies, not occurrence liability policies and Pennsylvania courts have refused to extend *Brakeman* to claims-made policies.[131] Ocwen argues the policies are not claims-made and *Brakeman* applies because there is no "unbargained-for extension of coverage."[132] While the parties dispute whether we are studying claims-made or occurrence policies, neither party offers facts or legal argument to support their position.

"A pure claims-made policy provides coverage for claims made during the policy period regardless of when the events out of which the claim arose occurred. In contrast, an occurrence policy provides coverage for all 'occurrences' which take place during a policy period regardless of when the claim is made."[133] Said differently, "[a] claims-made policy 'provides coverage for a wrongful act regardless of when it took place, as long as a claim is made during the relevant policy period.'"[134]

The two relevant policies between Radian and the insured are occurrence policies because Radian provides coverage for losses on the insured mortgages during the effective dates of the policies. The master policy is an occurrence policy because it sets an effective date for coverage to begin and requires the insured to renew after a certain date to continue coverage for the loan certificate. The master policy also excludes coverage for any losses related to delinquencies before the effective start date of the policy.

The pool policy is also an occurrence policy because it issues coverage for loss on the mortgages until those mortgages are paid off (meaning no more possibility for claims under the policy) or until the security is transfer, redeemed, or paid in full.[135] We cannot locate any language in either policy even suggesting Radian would cover claims on loan certificates where the foreclosure happened before the policy took effect, and in fact, the master policy language is directly contrary to the concept of a claims-made policy. We find the relevant policies are occurrence policies and we reject Radian's argument *Brakeman* does not apply because the policies are claims-made.

Radian argues courts refuse to apply *Brakeman* "in a manner that imposes an unbargained-for extension of coverage."[136] Radian never explains how *Brakeman* extends coverage not contemplated in the relevant policies.[137] The relevant policies provide insurance in

the event of a loss because the property is foreclosed on for less than the mortgage amount and there is no dispute Ocwen made claims because the underlying properties were foreclosed on for less than the mortgage amount. Ocwen's untimely claims are for the exact kind of coverage for which the insured paid premiums and Radian accepted those premiums to provide first party mortgage insurance.

        ii.      **_Brakeman_ applies to Radian's claim submission provision.**

Radian next argues *Brakeman* does not apply because the holding applies only to notice provisions, and not the insured's duties under the claim submission provision.[138] Radian relies on cases holding *Brakeman* does not apply to an insurance policy's suit limitation provision and argues "there is no principled difference between a suit limitation provision and a deadline for claim submission."[139] We find Radian's argument misguided for several reasons. If Radian truly believed there is no principled difference between suit limitation and claim submission provisions, it begs the question why its policies include different provisions for each, differently worded and with different timeframes. Radian's cites distinguish between the notice and suit limitation clauses and the description of notice provision is curiously close to a claims submission procedure. For example, in *Napa Tranps., Inc. v. Travelers Property Cas.*, a district court held *Brakeman* did not apply to an insurance policy's suit limitations provisions because it only applies to the "notice provision requiring written notice of an accident."[140]

Our finding the notice provision is akin to the claims submission process is supported by the Pennsylvania Supreme Court's description of the notice provision in *Brakeman* as the "heads up" to the insurance company "to acquire, through an adequate investigation, full information about the circumstances of the case."[141] Ocwen's claim, after it either acquires the borrower's

title or transfers title by approved sale, is notice to Radian the proceeds did not satisfy the mortgage amount and allows Radian to investigate the circumstances of Ocwen's claim.

We deny Radian summary judgment on loan certificates 53106980 and 65575723 because there is a genuine dispute of material fact whether Ocwen's untimely submission of the claim actually prejudiced Radian.

**B.    Ocwen's bad faith claim**

Radian moves to dismiss Ocwen's bad faith claim on 17 loan certificates arguing Ocwen failed to bring the bad faith claim within Pennsylvania's statute of limitations.

**1.    Ocwen's claims for bad faith for 17 loan certificates are barred by Pennsylvania's two year statute of limitations.**

Radian moves for summary judgment on Ocwen's bad faith claims on 17 loan certificates arguing Ocwen's claims are barred by the two year statute of limitations because Radian denied, rescinded, or curtailed coverage more than two years before December 22, 2016. Ocwen argues we should apply the longer contractual period rather than Pennsylvania's two year statute of limitations.[142] Ocwen offers no argument against granting summary judgment for bellwether certificates under policies with a two year suit limitation where Radian denied, rescinded, or curtailed coverage before December 22, 2014.

**a.    Relevant undisputed facts.**

Of the 17 loan certificates, 10 loan certificates are governed by the master or bulk policies with a two year suit limitation provision. Below are the loan certificates and the undisputed last day Radian denied, rescinded, or curtailed coverage for loans covered by a two year suit limitation period:

| Loan Certificate | Last date Radian denied, curtailed, or rescinded coverage based on Ocwen's claim | Statement of Undisputed Facts |
|---|---|---|
| 82618193 | 11/11/2013 | ECF Doc. No. 85-3 at 48, ¶ 202 |
| 99308281 | 6/5/2014 | ECF Doc. No. 85-3 at 14, ¶ 109 |
| 53001043 | 5/19/2014 | ECF Doc. No. 85-3 at 22, ¶ 126 |
| 53225724 | 10/13/2014 | ECF Doc. No. 85-3 at 33, ¶ 151 |
| 96405536 | 7/7/2014 | ECF Doc. No. 85-4 at 2, ¶ 209 |
| 96413862 | 7/7/2014 | ECF Doc. No. 85-4 at 4, ¶ 216 |
| 65584131 | 12/11/2013 | ECF Doc. No. 85-4 at 16, ¶ 255 |
| 64040480 | 5/2/2013 | ECF Doc. No. 85-4 at 12, ¶ 244 |
| 95652591 | 8/13/2014 | ECF Doc. No. 85-3 at 7, ¶ 94 |
| 95910060 | 3/14/2014 | ECF Doc. No. 85-3 at 9, ¶ 99 |

Seven loan certificates are governed by the pool policy with a three year suit limitation provision. The suit limitation provides "[n]o suit or action on this Policy for recovery of any claim shall be sustained in any court of law or equity unless all material conditions of this Policy have been compiled with …. A suit against [Radian] must be commenced within three (3) years after loss can be determined."[143] We evaluated the loan certificates and the undisputed last day Radian denied, rescinded, or curtailed coverage for loans covered by a three year suit limitation period:

| Loan Certificate | Last date Radian denied, curtailed, or rescinded coverage based on Ocwen's claim | Statement of Undisputed Facts |
|---|---|---|
| 65860272 | 11/11/2013 | ECF Doc. No. 85-3 at 41, ¶ 172 |
| 65954693 | 11/10/2014 | ECF Doc. No. 85-3 at 18, ¶ 119 |
| 65791708 | 7/14/2014 | ECF Doc. No. 85-3 at 35, ¶ 156 |
| 53108723 | 7/29/2014 | ECF Doc. No. 85-3 at 27, ¶ 139 |
| 65957170 | 8/26/2014 | ECF Doc. No. 85-4 at 22, ¶ 275 |
| 65817890 | 2/3/2012 | ECF Doc. No. 85-4 at 18, ¶ 261 |
| 53107616 | 4/30/2014 | ECF Doc. No. 85-2 at 45, ¶ 62 |

b.      **Analysis**

Ocwen's bad faith claim under 42 Pa. C.S. § 8371 is governed by a two year statute of limitations.[144]  A bad faith claim accrues when Radian allegedly "first denied the insured's claim in bad faith."[145]  Ocwen sued Radian on December 22, 2016 meaning the statute of limitations began on December 22, 2014.

We grant summary judgment for the 10 loan certificates (82618193, 99308281, 53001043, 53225724, 96405536, 96413862, 65584131, 64040480, 95652591, and 95910060) where Ocwen does not dispute the two year statute of limitations because it is undisputed Radian took its final action[146] before December 22, 2014.

We now turn to Ocwen's argument the pool policies' three year suit limitation provision modifies Pennsylvania's two year statute of limitations for statutory bad faith claims.  While neither party addresses this issue, Pennsylvania law does allow parties to agree to a longer statute of limitations than statutorily proscribed.[147]  Ocwen, without citing caselaw, argues "suit" includes any claim the insured might bring and because Radian did not expressly exclude bad

faith claims, the parties extended the statute of limitations for § 8371.  Radian argues the suit limitations provision applies to breach of contract claims arising from the policy, and Ocwen's bad faith claim is separate and distinct from the parties' contract dispute.

The suit limitation specifies "[n]o suit or action on this Policy" and also ties the start date to when the insured can determine "its loss" which refers to breach of contract claims arising from the policy.[148]  Pennsylvania treats statutory bad faith as a tort claim having a two year statute of limitations as opposed to the four year statute of limitations for breach of contract bad faith claims.[149]  Pennsylvania's statutory bad faith claims "are deemed to be and are adjudicated separately and apart from the contract disputes upon which they are based…"[150]

Because Ocwen's statutory bad faith claim is a separate and distinct claim from its claim based on the policy, the suit limitation provision does not modify Pennsylvania's two statute of limitations for bad faith claims under § 8371.  We grant Radian summary judgment because Ocwen's bad faith claims on loan certificates 65860272, 65954693, 65791708, 53108723, 65957170, 65817890, and 53107616 are barred by the statute of limitations because Radian last denied, rescinded, or curtailed coverage before December 22, 2014.

###  C.  Ocwen's equitable indemnification claim.

Radian seeks summary judgment on Ocwen's request for equitable indemnification on loans where Ocwen seeks damages it suffered as the servicer, as opposed to its breach of contract claims on behalf on the insured.  Radian does not dispute Ocwen's representation its equitable indemnification claim does not apply to the bellwether loan certificates.  While Radian represents the parties agreed to move for summary judgment on these issues without proffering facts, the parties cannot agree away our Article III "prohibition on advisory opinions."[151]  We deny Radian's motion without prejudice as premature.

## IV. Summary judgment motions on Radian's counterclaims.

Radian counterclaims for statutory insurance fraud, breach of contract, unjust enrichment, and declaratory judgment. Ocwen moves for summary judgment on Radian's statutory insurance fraud claims under 18 Pa.C.S. § 4117 for all 30 loan certificates. Ocwen moves for summary judgment on Radian's breach of contract claims because Ocwen is not a party to the insurance policies for the bellwether loans. Ocwen moves for summary judgment on Radian's unjust enrichment claim because Radian fails to adduce evidence Ocwen received any benefit from Radian.

### A. Radian's statutory insurance fraud counterclaim

#### 1. Radian's statutory insurance fraud claims for 26 loan certificates are barred by the statute of limitations.

##### a. Relevant undisputed facts

| Loan Certificate | Claim Date to Radian | Statement of Undisputed Facts |
|---|---|---|
| 53011114 | 4/6/2016 | ECF Doc. No. 85-2, ¶ 54. |
| 65858954 | 3/11/2016 | ECF Doc. No. 85-3, ¶ 85. |
| 53010655 | 7/30/2015 | ECF Doc. No. 85-3, ¶ 130. |
| 65826484 | 7/8/2015 | ECF Doc. No. 85-3, ¶ 164. |
| 53194326 | 4/8/2015 | ECF Doc. No. 85-3, ¶ 143. |
| 96729457 | 3/30/2015 | ECF Doc. No. 85-4, ¶ 279. |
| 53106980 | 12/26/2014 | ECF Doc. No. 85-4, ¶ 238. |
| 65575723 | 11/3/2014 | ECF Doc. No. 85-4, ¶ 249. |
| 65818414 | 9/23/2014 | ECF Doc. No. 85-3, ¶ 159. |
| 99573712 | 9/22/2014 | ECF Doc. No. 85-4, ¶ 229. |
| 65957170 | 6/13/2014 | ECF Doc. No. 85-4, ¶ 274. |
| 53107616 | 1/7/2014 | ECF Doc. No. 85-2, ¶ 60. |
| 65791708 | 12/29/2013 | ECF Doc. No. 85-3, ¶ 154. |

| | | |
|---|---|---|
| 53225724 | 12/16/2013 | ECF Doc. No. 85-3, ¶ 149. |
| 96413862 | 10/25/2013 | ECF Doc. No. 85-4, ¶ 213. |
| 96405536 | 10/7/2013 | ECF Doc. No. 85-4, ¶ 207. |
| 95910060 | 9/26/2013 | ECF Doc. No. 85-3, ¶ 97. |
| 99308281 | 9/17/2013 | ECF Doc. No. 85-3, ¶ 107. |
| 53108723 | 8/22/2013 | ECF Doc. No. 85-3, ¶ 137. |
| 65584131 | 6/18/2013 | ECF Doc. No. 85-4, ¶ 254. |
| 95652591 | 2/6/2013 | ECF Doc. No. 85-3, ¶ 92. |
| 82618193 | 1/30/2013 | ECF Doc. No. 85-3, ¶ 200. |
| 64040480 | 1/17/2013 | ECF Doc. No. 85-4, ¶ 243. |
| 65860272 | 12/10/2012 | ECF Doc. No. 85-3, ¶ 170. |
| 53001043 | 8/31/2012 | ECF Doc. No. 85-3, ¶ 124. |
| 65817890 | 4/26/2011 | ECF Doc. No. 85-4, ¶ 260. |
| 65954693 | 11/10/2014[152] | ECF Doc. No. 85-3, ¶ 119. |
| 65815327 | | |
| 96408079 | | |
| 65728594 | | |

**b.    Analysis**

**i.    The statute of limitations bars Radian's statutory insurance fraud claims where Ocwen submitted a claim before August 10, 2015.**

We deny Ocwen's motion for summary judgment on loan certificates 65815327, 96408079, and 65728594 because Ocwen failed to argue when it submitted its claim to Radian or facts to show Radian failed to adduce evidence to support its statutory insurance fraud claim. We cannot rule as a matter of law as to these loan certificates without fact support.

We next address Ocwen's argument Radian's statutory insurance fraud claims where Ocwen submitted a claim before August 10, 2015 are barred by the two year statute of

limitations.[153]  In its counterclaims, Radian alleges "Ocwen knowingly, and with intent to defraud Radian, submitted thousands of meritless claims" and Ocwen included false, incomplete, or misleading information as part of these claims.[154]

While Ocwen incorrectly argues every bellwether loan is barred by the statute of limitations because it submitted a claim before August 10, 2015, in the statement of undisputed facts, Ocwen agreed (1) it presented a claim for loan certificate 53011114 on April 6, 2016 and (2) it presented a claim for loan certificate 65858954 on March 11, 2016.[155]

Radian now argues its claim for insurance fraud accrued when Ocwen filed its complaint December 22, 2016.  Ocwen filed a detailed complaint which we found sufficient to survive a motion to dismiss.  Radian now alleges a false or even misleading statement consists of Ocwen knowingly filed a false complaint in this court and its claim for insurance fraud accrued then. Even though Radian argues otherwise, its argument necessary implicates Ocwen's counsel as complicit for failing to make sure its client had a good faith basis for its allegations.  For Radian's argument to survive, Radian would have to adduce evidence suggesting Ocwen "knowingly and with the intent to defraud" placed material false information in its complaint to support recovery on a bellwether loan certification.  Radian does not adduce evidence showing Ocwen included false or misleading information in the complaint.  If Radian is basing its statutory insurance fraud claim on Ocwen's alleged false or misleading statements in the claims submitted to Radian, then Radian's cause of action accrued when Ocwen submitted the original claim, and not the filing of this complaint.[156]

Based on the adduced evidence, Radian's claim for insurance fraud under § 4117 on the bellwether loans accrued when Ocwen submitted the allegedly false claim to Radian and any claim submitted before August 10, 2015 is barred by the statute of limitations.  We grant Ocwen

summary judgment on Radian's claim for insurance fraud as to loan certificates 53010655, 65826484, 53194326, 96729457, 53106980, 65575723, 65818414, 99573712, 65957170, 53107616, 65791708, 53225724, 96413862, 96405536, 95910060, 99308281, 53108723, 65584131, 95652591, 82618193, 64040480, 65860272, 53001043, 65817890, and 65954693. The statute of limitations does not bar Radian's claims for loan certificate 53011114 and 65858954 so we address the merits of Radian's claims.

### 2.  Radian fails to adduce evidence of a statutory insurance fraud claim against Ocwen for loans 53011114 and 65858954.

Ocwen argues Radian cannot bring an insurance fraud claim under § 4117 against it because Ocwen does not own any of the bellwether loans.  Radian argues there are disputed facts whether Ocwen owns certain bellwether loans and § 4117 applies to Ocwen because includes "any person" who presents a false claim to an insurer.  Ocwen also argues Radian failed to adduce evidence Ocwen knowingly and with the intent to defraud submitted false, incomplete, or misleading claims.

Pennsylvania defines insurance fraud under § 4117(a)(2) to apply to "a person...[who] presents, or causes to be presented" a fraudulent claim for insurance.[157]  Ocwen does not cite support for its argument Section 4117's reference to "any person" in limited only to the insured/owner under the policy.  At least two courts have allowed insurance companies to bring an insurance fraud against insurance adjusters who allegedly participated in the submitted the fraudulent claim.[158]  We reject Ocwen's unsupported argument Pennsylvania law limited an insurance fraud claim to only be brought against the insured under the policy.

To prove a claim under § 4117, Radian must adduce evidence Ocwen "(1) knowingly (2) presented false, incomplete or misleading information (3) concerning any fact or thing material to a claim (4) to [Radian]."[159]  Radian failed to adduce evidence Ocwen "knowingly" submitted

false, incomplete, or misleading information for loan certificates 53011114 and 65858954 in the statement of undisputed facts. Radian does not adduce evidence part of the claim is false or evidence raising an inference an individual at Ocwen knew part of the claim is false and submitted the information to Radian anyway. As to loan certificate 53011114, Radian adduces evidence Ocwen "presented a claim" to it and Radian curtailed the claim because of "Ocwen's delay in initiating Appropriate Proceedings."[160] As to loan certificate 65858954, Radian adduces evidence Ocwen "presented a claim" to it and Radian curtailed the claim because of "Ocwen's delay in initiating foreclosure proceedings and failure to make timely or adequate efforts to cure the default, failure to make timely quality right party contact, failure to pursue alternatives to foreclosure, and failure to send a breach letter."[161]

At summary judgment, Radian must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there *is* a genuine issue for trial."[162] To survive a motion for summary judgment on these loan certificates, Radian would need to adduce evidence raising the inference a person at Ocwen knew a part of the claim was false, misleading, or incomplete and submitted the claim for coverage anyway. Because Radian fails to adduce evidence supporting this inference, we grant Ocwen summary judgment on the insurance fraud counterclaim under § 4117 for loan certificates 53011114 and 65858954.

**B.     Radian's breach of contract counterclaim.**

   **1.     We grant Ocwen's motion for summary judgment on Radian's breach of contract counterclaim because Ocwen does not own 29 loan certificates, but deny Ocwen's motion as to the loan certificate Ocwen owns.**

Ocwen moves for summary judgment on Radian's breach of contract claims on the grounds Ocwen is not a party to the insurance policies for the bellwether loans and cannot be

liable for breach of contract. Radian argues its breach of contract claim against Ocwen is limited to loan certificates which Ocwen owns (as the "insured") and does include loans where Ocwen is only the servicer.

Radian adduces evidence Ocwen owns one bellwether loan and we should deny Ocwen's motion for summary judgment on its breach of contract for loan certificate 99573712 because Ocwen is the owner.[163] We deny Ocwen's motion for summary judgment on Radian's breach of contract claim on loan certificate 99573712 where it adduces evidence Ocwen is the owner of the loan certificate. We grant Ocwen summary judgment on Radian's breach of contract claim on the remaining loan certificates because there is no evidence Ocwen owns those loan certificates and Radian's breach of contract claim is limited to loan certificates owned by Ocwen.

### C. Radian's unjust enrichment counterclaim.

#### 1. We deny Ocwen summary judgment on Radian's unjust enrichment claim for the remaining bellwether loans.

Ocwen moves for summary judgment on Radian's unjust enrichment claim because Radian fails to adduce evidence Ocwen received any benefit from Radian. Ocwen does not specify which loans certificate it moves for summary judgment on and does not cite to any factual evidence to support its argument. Radian also does not respond explaining which loan certificates it unjustly conferred a benefit or identifying which facts support this finding. At numerous points in their motions both parties stray afield from their Rule 56 duty to underpin their legal arguments with "supporting factual positions" and this is another example. We decline to root through the over 3,000 page appendix and determine which of the bellwether certificates Ocwen's argument applies when the parties do not cite the evidence.[164] We deny Ocwen's motion for summary judgment on Radian's unjust enrichment claim.

## V. Conclusion

Ocwen and Radian exhausted multiple arguments seeking judgment during the middle of their discovery period. In limited instances, we are unable to decide issues without a trial or otherwise have not been given a sufficient record. As shown, there are several issues which are ripe for summary judgment. In the accompanying Order, we grant in part and deny in part the cross-motions for summary judgment and the parties shall proceed to our April 16, 2018 trial.

---

[1] Statement of Undisputed Facts, ECF Doc. No. 85-2, ¶¶ 2, 4. We consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). Because Radian and Ocwen cross move for summary judgment, we alternately view the evidence in a light most favorable to non-moving party depending on which argument we address. Our Policies require a Statement of Undisputed Material Facts be filed in support of a Rule 56 motion, as well as an appendix of exhibits. Radian filed its Statement of Undisputed Material Facts and Appendix at ECF Doc. No. 84. Ocwen responded to Radian's Statement of Undisputed Facts and filed its Statement of Undisputed Material Facts and Appendix at ECF Doc. No. 85. As the parties both moved for summary judgment, Radian responded to Statement of Undisputed Facts and added exhibits to the Appendix at ECF Doc. No. 90 and Ocwen responded to Statement of Undisputed Facts and added exhibits to the Appendix at ECF Doc. No. 89. Radian filed a surreply with additional exhibits to the Appendix at ECF Doc. No. 95.

[2] Complaint, ECF Doc. No. 35, ¶ 63.

[3] Statement of Undisputed Facts, ECF Doc. No. 85-2, ¶ 7.

[4] *Id.* ¶¶ 8-9.

[5] *Id.* ¶¶ 5-8, 11, 30.

[6] *Id.* ¶¶ 70, 79-80, 98.

[7] Answer and Counterclaim, ECF Doc. No. 54.

[8] *Id.*

[9] Scheduling Order, ECF Doc. No. 47 at 2.

[10] Radian does not address bellwether Loan Certificate 65815327 in its Motion or statement of undisputed facts. Radian moves on 37 loans and does not include loan certificate 96408079 or loan certificate 65728594 in its list but then later in its Motion, includes loan certificate 96408079 and loan certificate 65728594 in its argument on the statute of limitations bar. *See* ECF Doc. No. 84 at 3. Radian, however, does not plead facts related to loan certificates 96408079 or 65728594 preventing us from ruling as a matter of law.

[11] Loan certificate 65760521 (ECF Doc. No. 85-2, ¶ 70); Loan certificate 65854865 (ECF Doc. No. 85-2, ¶ 78); Loan certificate 65951456 (ECF Doc. No. 85-3,¶ 174); Loan Certificate 65953088 (ECF Doc. No. 85-3, ¶ 182); Loan Certificate 65955874 (ECF Doc. No. 85-4, ¶ 263); Loan Certificate 65989394 (ECF Doc. No. 85-3, ¶ 189); Loan Certificate 96723376 (ECF Doc. No. 85-4, ¶ 218); Loan Certificate 99383502 (ECF Doc. No. 85-3, ¶ 110); Loan Certificate 96380767 (ECF Doc. No. 85-3, ¶ 100); Loan Certificate 65646540 (ECF Doc. No. 85-2, ¶ 63).

[12] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey,* 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson,* 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris,* 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg,* 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh,* 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their care for which they have the burden of proof." *Willis,* 808 F.3d at 643 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis,* 808 F.3d at 643 (citing *Celotex Corp.,* 477 U.S. at 322-323).

[13] Radian also moves for summary judgment on the other non-bellwether loan certificates covered under Pool Policy 06-103210 because it paid the Aggregate Risk Amount.

[14] Appx. 236a.

[15] Appx. 240a.

[16] Appx. 893a.

[17] Appx. 1960a.

[18] ECF Doc. No. 84 at 2.

[19] *Id.* ¶ 13.

[20] *Id.* ¶ 29.

[21] Four loan certificates (86218193, 96405536, 96729457, and 95652591) are governed by Radian's master policy *Id.* ¶ ¶ 89, 198, 205, 277. Another four bellwether loans are covered by the suit limitation provision in this master policy. Loan Certificate 53001043 is governed by Bulk Policy 06-993139. *See* Appx. 161a. Loan Certificate 64040480 is governed by Bulk Policy 01-889025. *See* Appx. 104a. Loan certificate 65575723 is governed by Bulk Policy 02-998058. *See* Appx. 112a. Loan certificate 65584131 is governed by Bulk Policy 03-998033. *See* Appx. 118a.

[22] *See* Appx. 88a.

[23] Appx. 89a.

[24] Appx. 88a.

[25] Appx. 94a.

[26] Appx. 95a.

[27] ECF Doc. No. 85-4, ¶ 256. Loan certificate 65817890.

[28] Appx. 187a.

[29] Appx. 187a.

[30] *Id.*

[31] Appx. 188a.

[32] ECF Doc. No. 84 at 2.

[33] *Intervest Nat. Bank v. Welch*, No. 10-3119, 2011 WL 1343036, at *10 (E.D. Pa. Apr. 7, 2011) (citing *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2011) and *Flatley v. Penman*, 632 A.2d 1342, 1344 (Pa. Super. 1993)).

[34] *Id.* (citing *Meeting House Land Ltd. v. Melso*, 628 A.2d 854-857-58 (Pa. Super. 1993)).

[35] Appx. 88a.

[36] Appx. 94a.

[37] *Clarke v. MMG Ins. Co.*, 100 A.3d 271, 277 (Pa. Super. 2014) (citing *Cohen v. Erie Indem. Co.*, 14 Pa. D. & C. 3d 444, 448 *affirmed*, 432 A.2d 596 (Pa. Super. 1981) (insurance policy subsections would be similarly phrased if their intention were [sic] the same)).

[38] Appx. 187a.

[39] *Id.*

[40] 570 Fed. Appx. 209 (3d Cir. 2014).

[41] *Id.* at 212.

[42] 65817890 and 64040480.

[43] F.S.A. § 95.03.

[44] F.S.A. § 95.11(2)(b).

[45] Appx. 188a.

[46] Appx. 95a.

[47] *See, e.g.*, *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 709-10 (6th Cir. 1992) (finding the conformity clause "simply emphasizes that parties cannot contract to do that which the state legislature has forbidden" and because Ohio did not prohibit parties from shortening its statute of limitations for contracts, the policy and state statute of limitations were not in conflict); *Fetterhoff v. Liberty Life Assur. Co.*, No. 06-0278, 2007 WL 1589539, *1 (S.D. Ala. May 31, 2007) (finding an insurance policy's conformity clause "does not invalidate the contractual limitations period" where there is no "statute or authority which would prohibit the contractual shortening of the statutory limitation"); *Massengill v. Shenandoah Life Ins. Co.*, 459 F. Supp. 2d 656, 660-61 (W.D. Tenn. 2006) (finding an insurance policy's suit limitation period did not have to be amended to match Tennessee's statute of limitations because Tennessee does not have "a statute that clearly prohibited parties from shortening the time in which a party could bring suit on a crime."); *Kentucky League of Cities, Inc. v. General Reinsurance Corp.*, 174 F. Supp. 2d 532, 541 (W.D. Ky. 2001) (explaining Kentucky law will conform an insurance policy "where its terms directly conflicts with an insurer's statutorily-mandated duty to either include or exclude a certain provision" for example, enforce a contractual period to bring an insurance claim shorter than the statute of limitations because "there must be a statute specifically proscribing the contractual shortening of the statutory limitation before there can be a conflict").

[48] Loan certificates 53001043, 5301065, 53108723, 53194326, 53225724, 65791708, 65818414, 65826484, 65860272, 65954693, 82618193, 96405536, 96413862, and 99573712.

[49] Appx. 362a-364a; 374a-376a; 410a-412a; 422a-423a; 433a-435a; 490a-492a; 512a-513a; 522a-524a; 596a-598a; 687a-689a; 731a-733a; 742a-744a; 835a-837a.

[50] ECF Doc. No. 85-3 at 20-22; 23-25; 26-27; 28-30; 31-33; 33-35; 35-37; 37-39; 39-41; 47-49; ECF Doc. No. 85-4 at 1-2; 2-4; 6-9.

[51] Appx. 841a.

[52] *Id.*

[53] ECF Doc. No. 85-3, ¶ 119.

[54] Appx. 1956a.

[55] Appx. 1957a.

[56] Appx. 1957a-58a.

[57] Appx. 1956a.

[58] *Id.*

[59] *Associated Elec. & Gas Ins. Services, Ltd. v. Rigas*, 382 F. Supp. 2d 685, 690-91 (E.D. Pa. 2004) (citing *Matincheck v. John Alden Life Ins. Co.*, 93 F.3d 96, 102 (3d Cir. 1996) and *Rohm & Haas Co. v. Continental Casualty Co.*, 732 A.2d 1236, 1251 (Pa. Super. 1999)).

[60] *Rideau v. Great-West Life & Annuity Ins. Co.*, 981 F. Supp. 2d 544, 549 (E.D. La. 2013) (applying Louisiana law) (citing *Pruco Life Ins. Co. v. Wilmington Trust Co.*, 721 F.3d 1, 7-8 (1st Cir. 2013) (applying Rhode Island law); *Avemco Ins. Co. v. Northern Colorado Air Charter, Inc.*, 38 P.3d 555, 559 (Co. 2002); *Mutual of Omaha Ins. Co. v. Korengold*, 241 N.W.2d 651, 651 (Minn. 1976); *Lundy v. Lititz Mut. Ins. Co.*, 100 S.E.2d 544, 547 (S.C. 1957); *Peterson v. New York Life Ins. Co.*, 240 N.W. 659, 660 (Minn. 1933).

[61] 38 P.3d 555.

[62] *Id.* at 557.

[63] *Id.*

[64] *Id.*

[65] *Id.* at 558.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.* at 559 (citing *Peterson*, 240 N.W. at 660 and 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 31:55 (1955)).

[71] *Id.* (internal citations omitted).

[72] *Id.* at 559-60 (internal citations omitted).

[73] *Id.* at 564.

[74] *Id.* at 563.

[75] *Id.*

[76] *Id.* at 564.

[77] *See id.* at 563.

[78] Appx. 1957a-58a.

[79] Appx. 836a.

[80] ECF Doc. No. 85-4 at 102.

[81] ECF Doc. No. 85-4, ¶ 65.

[82] Appx. 100a-101a. For the purposes of the motion, Ocwen accepts this document as governing this loan certificate except to "the extent [we] determine that the outcome will be different" based on this document.

[83] Appx. 100a.

[84] *Id.*

[85] Appx. 101a.

[86] Appx. 100a.

[87] Appx. 101a.

[88] Appx. 83a.

[89] Appx. 77a.

[90] Appx. 79a.

[91] ECF Doc. No. 85-3 at 33-35; ECF Doc. No. 85-4 at 6-9.

[92] Appx. 490a.

[93] *Id.*

[94] Appx. 490a.

[95] Appx. 210a.

[96] Both parties also argue about the bulk policies.  Ocwen does not move for summary judgment on a loan certificate governed by bulk policy so we do not address those arguments.

[97] Appx. 490a.

[98] Appx. 210a.

[99] *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 763 F. Supp. 2d 707, 727 (E.D. Pa. 2011), *rev'd,* 673 F.3d 221 (3d Cir. 2012) (reversed on other grounds) (citing *Musko v. Musko*, 697 A.2d 255, 257 (Pa. 1997) (Castille, J. dissenting) and *In re Alloy Mtg.*, 192 A.2d 394 (1963)).

[100] Appx. 836a.

[101] Appx. 101a.

[102] Appx. 101a.

[103] The parties dispute the date of the first curtailed payment; Radian states it is December 19, 2013 and Ocwen argues November 8, 2013 but the date is not relevant for our purposes.

[104] Appx. 385a-387a.

[105] Appx. 386a.

[106] ECF Doc. No. 85-2, ¶ 56.

[107] *Id.*

[108] Appx. 1959a.

[109] Appx. 1960a.

[110] *Fleming*, 52 F. Supp. 2d at 502 (citing *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 (3d Cir. 1999) and Restatement (Second) of Contracts, § 281 (1981)).

[111] *Id.* (internal citations omitted).

[112] *Id.*

[113] Appx. 398a.

[114] Appx. 236a-244a.

[115] Appx. 244a.

[116] Appx. 404a.

[117] The master policy requires claim submission within one year after the insured acquires title to the borrower's property whereas the pool policy requires claim submission after the insured conveys title to the property through an approved sale. Appx. 89a; 227a-235a.

[118] The pool policy requires Ocwen submit a claim within 60 days but states only a timing violation of more than 180 days will warrant cancellation of the policy. Appx. 241a. Radian agrees 180 days in the proper measure of a timely submission. *See* ECF Doc. No. 84-1 at 45.

[119] The parties dispute whether Ocwen submitted a claim on March 4, 2014. *See* ECF Doc. No. 90-1 at 34. However, because we are analyzing Radian's motion for summary judgment on this loan certificate, we view the evidence in a light most favorable to Ocwen.

[120] Appx. 238a.

[121] Appx. 81a.

[122] Appx. 83a.

[123] Appx. 445a.

[124] *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193, 197 (Pa. 1977).

[125] *Id.* at 197 (internal citations omitted).

[126] *Id.* at 196.

[127] *Id.* at 196-98.

[128] *Id.* at 198.

[129] *Pacific Employers Ins. Co. v. Global Reinsurance Corp. of America*, 693 F.3d 417, 435 (3d Cir. 2012) (quoting *Trustees of the Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890, 897 (3d Cir. 1987)).

[130] *Id.* (quoting *Trustees*, 815 F.2d at 897 and *Brakeman*, 371 A.2d at 197).

[131] *See ACE American Ins. Co. v. Underwriters at Lloyds and Companies*, 939 A.2d 935, 940 (Pa. Super. 2007) *aff'd*, 971 A.2d 1121 (Pa. 2009) (holding Pennsylvania "has not extended the *Brakeman* 'notice-prejudice' rule beyond the context of occurrence liability policies" to claims made policies).

[132] ECF Doc. No. 85-1 at 44.

[133] Couch on Insurance 3d § 102:22.

[134] *Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C.*, 32 F. Supp. 2d 219, 224 (E.D. Pa. 1998) (quoting *Township of Center, Butler County, Pennsylvania v. First Mercury Syndicate, Inc.*, 117 F.3d 115, 118 (3d Cir. 1997)).

[135] Appx. 238a.

[136] *Mabrat v. Allstate Ins. Co.*, No. 12-1293, 2012 WL 6209884, at *5 (E.D. Pa. Dec. 12, 2012) (quoting *City of Harrisburg v. Int'l Surplus Lines Ins. Co.*, 596 F. Supp. 954, 961-62 (M.D. Pa. 1984)).

[137] Radian relies on *Lexington Ins. Co. v. Western Pennsylvania Hosp.*, 423 F.3d 318, 322 (3d Cir. 2005) in its un-bargained for extension of coverage argument. *Lexington* is not persuasive because it is a claims-made policy and because the parties did not dispute the insured did not give notice of the claim until 18 months after the policy expired. *Id.* Unlike *Lexington*, policies are occurrence liability and Radian does not allege or argue Ocwen's claim submission on either loan certificate occurred after the policy expired.

[138] Radian also argues it provides first-party mortgage insurance and attempts to distinguish this because "[n]o third party is involved." ECF Doc. No. 84-1 at 47. We do not understand Radian's distinction because *Brakeman* is a first party insurance policy for motorcycle insurance.

[139] ECF Doc. No. 84-1 at 49.

[140] No. 06-1866, 2006 WL 5582216, at *3 n.6 (M.D. Pa. Nov. 20, 2006).

[141] *Id.* at 197 (internal citations omitted).

[142] Ocwen does not advise which of these 17 loan certificates are governed by a policy with the three year suit limitation provision and which are governed by a two year suit limitation provision.

[143] Appx. 187a, 205a, 233a, 216a, 241a.

[144] *See CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 365 (E.D. Pa. 2009).

[145] *Id.* (quoting *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1040 (Pa. Super. 1999))

[146] For some of these loan certificates the claim may have accrued before Radian's final denial if its earlier denials were in bad faith. For simplicity's sake, however, we will use the date of Radian's latest action because it does not affect the statute of limitations.

[147] *See Lehman Bros.*, 942 F. Supp. 2d at 531 (holding Pennsylvania legislature "contemplated such contractual extensions" on the statute of limitations); *Redevelopment Authority of City of Philadelphia v. Fidelity and Deposit Co. of Maryland*, 665 F.2d 570, 773 (3d Cir. 1981) (finding parties contractually lengthened the statute of limitations beyond Pennsylvania's time limit because "parties may on agree on appropriate limitations periods").

[148] Appx. 187a, 205a, 233a, 216a, 241a.

[149] *Ash v. Continental Ins. Co.*, 932 A.2d 877, 884-85 (Pa. 2007).

[150] *Fleming v. CNA Ins. Co.*, 52 F. Supp. 2d 499, 503 (E.D. Pa. 1999) (citing *Nealy v. State Farm Mutual Automobile Insurance Co.*, 695 A.2d 790, 794 (Pa. Super. 1997), *appeal denied*, 717 A.2d 1028 (1998)).

[151] *Keitel v. Mazurkiewicz*, 729 F.3d 278, 280 (3d Cir. 2013) (quoting *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)).

[152] The parties do not include the date Ocwen submitted a claim but agreed Radian rescinded the loan on November 10, 2014 meaning Ocwen submitted its claim before November 10, 2014.

[153] 42 Pa. C.S. § 5552(b)(1).

[154] ECF Doc. No. 54, ¶ 166.

[155] ECF Doc. No. 85-2, ¶¶ 54, 85.

[156] The parties dispute whether Ocwen's complaint is protected by judicial privilege under *Church Mutual Insurance Company v. Alliance Adjustment Group*, --- F. App'x. ---, 2017 WL 4082881, at *3-4 (3d Cir. 2017) and *Silver v. Mendel*, 894 F.2d 598, 603 (3d Cir. 1990). We do not reach the question of judicial privilege because Radian does not adduce facts to support its

argument Ocwen knowingly and with the intent to defraud placed false or misleading information in its complaint.

[157] § 4117(a)(2).

[158] *See id.* at 727 (denying a motion to dismiss where insurance company alleged the insurance adjusters knowingly submitted a misleading estimate for damages with the insured's claim); *Grammenos v. Allstate Ins. Co.*, No. 07-2725, 2009 WL 1068799, at *1 (E.D. Pa. April 21, 2009) (denying a motion to dismiss where insurance company alleges the insurance adjuster knowingly misrepresented the date the he assessed the damage for the insured's claim).

[159] *Church Mutual Insurance Company v. Alliance Adjustment Group*, 102 F. Supp. 3d 719, 727 (E.D. Pa. 2015) (citing *State Farm Mut. Auto. Ins. Co. v. Lincow*, 715 F. Supp. 2d 617, 632 n.13 (E.D. Pa. 2010), *aff'd*, 444 F. App'x 617 (3d Cir. 2011)).

[160] ECF Doc. No. 85-2 at 42.

[161] ECF Doc. No. 85-3 at 2.

[162] *Daubert v. NRA Group, LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Celotex*, 477 U.S. at 324).

[163] ECF Doc. No. 85-4, ¶ 63.

[164] Or as Judge Posner described so evocatively "'[w]e are not like pigs, hunting for truffles buried in' the record" to determine which loan certificates Ocwen's arguments factually apply. *Albrechtsen v. Board of Regents of University of Wisconsin System*, 309 F.3d 433, 436 (7th Cir. 2002) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).